CARRIE E. WAY *et al.*

*v.*

ANNA M. ROTH *et al.*

*Filed at Mt. Vernon November 22, 1895.*

1. EQUITY—*power of equity to correct deeds.* Equity will correct mistakes in deeds when clearly proved and the rights of innocent purchasers have not intervened, so as to make such correction inequitable.

2. MORTGAGES—*when equity will correct mortgage as against grantee of the property.* A mortgage executed with the belief of both mortgagor and mortgagee that a certain building, being the principal security, was upon the mortgaged property, but which, by mistake, had been built upon adjoining lots not owned by the mortgagor, will be corrected so as to cover the lots holding such building, as

against a grantee through *mesne* conveyances of the property, who, sharing the common mistake of all the parties interested, purchased subject to the mortgage, and who, to protect herself, and with full knowledge of the original mistake, bought the lots under the building at their mere ground value.

3. SAME—*mortgage cannot cover both properties.* In such case the mortgage, when corrected, should be made to cover only the after-acquired lots on which the building is situated, and cannot be made to cover both those and the original lots described in the mortgage.

4. SAME—*order in which the mortgage liens should be paid.* In marshaling the liens in such case, a mortgage given by the final grantee of the property for the purchase price of the lots upon which the building stood, though subsequent in time, should be first paid, but a mortgage taken by an intermediate owner for a balance of purchase money should be postponed to the first mortgage.

5. REAL PROPERTY—*title afterwards acquired inures under covenants of warranty.* Title to land acquired by a grantor after he has conveyed by covenants of warranty, inures, by way of estoppel, to the benefit of the grantee and his privies.

*Way* v. *Roth*, 58 Ill. App. 198, reversed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. ALONZO S. WILDERMAN, Judge, presiding.

J. W. BARTHOLOMEW, and B. H. CANBY, for appellants:

The court cannot, under color of reformation, make a contract for parties which both never assented to or intended to make. 1 Jones on Mortgages, sec. 97.

A mistake on one side may be ground for rescinding, but not for correcting or rectifying, an agreement. Kerr on Fraud and Mistake, sec. 422; *Sutherland* v. *Sutherland*, 69 Ill. 488; *Schwass* v. *Hershey*, 125 id. 653; *Wilson* v. *Byers*, 77 id. 76; *Broadwell* v. *Broadwell*, 1 Gilm. 607.

After-acquired property cannot be made subject to the lien of a mortgage unless the parties intended that it should be. 1 Jones on Mortgages, sec. 153.

A false representation by the vendor, which influences the conduct of the other party and induces him to make the purchase, will vitiate and avoid the contract; and in

making the representation it is immaterial whether he knows it to be false or not. *Lockridge* v. *Foster*, 4 Scam. 573; *Mitchell* v. *McDougall*, 62 Ill. 500; *Baker* v. *Rockabrand*, 118 id. 365; *Hicks* v. *Stevens*, 121 id. 193; Pomeroy's Eq. Jur. sec. 891.

Nothing is more clear in equity than the doctrine that a contract founded in a mutual mistake of the facts constituting the very basis or essence of it will avoid it. *Leger* v. *Bonaffe*, 2 Barb. 475; *Allen* v. *Hammond*, 11 Pet. 63; *Daniel* v. *Mitchell*, 1 Story, 173; *Irick* v. *Fulton*, 3 Gratt. 193; *Marvin* v. *Bennett*, 8 Paige, 312.

A mutual mistake in regard to the title to property is a ground for rescinding a contract. *Haddock* v. *Williams*, 10 Vt. 570; *Brown* v. *Lamphear*, 35 id. 252; *Smith* v. *Robertson*, 23 Ala. 312.

DILL & SCHAEFER, and GEORGE C. REBHAN, for appellee Anna M. Roth:

The principle contended for by us is asserted in the case of *Wilson* v. *Byers*, 77 Ill. 76.

Is a court of equity powerless to correct an admitted mistake? In *Pool* v. *Docker*, 92 Ill. 501, the court says: "Corrections of mistakes in any transaction is a principal head of equity jurisdiction."

In *Hunt* v. *Admr. of Rousmaniere*, 1 Pet. 1, Justice Washington said: "We find no case which we think precisely in point, and are unwilling, where the effect of the instrument is acknowledged to have been entirely misunderstood by both parties, to say that a court of equity is incapable of affording relief."

By paying these liens Mrs. Way will acquire this property at exactly the price she agreed to pay for it. In this manner full and complete justice will be done. In this way it must be done. If Perry had refused to sell lots 32 and 33, a court of equity would not permit him to enjoy these improvements without making compensation therefor. Story's Eq. Jur. secs. 388, 799 *a*, 1237-1239.

We refer to the case of *Snyder* v. *Partridge*, 138 Ill. 173, as a case involving the correction of a mistake, and as illustrating how anxious courts are to do justice in this class of cases.

Mr. JUSTICE WILKIN delivered the opinion of the court:

On October 8, 1892, Thomas B. Glenn, being the owner of lots 30 and 31 in Alta Sita, upon which were supposed to be located a dwelling house and other improvements, executed a mortgage to appellee Anna M. Roth to secure the payment of $1400. Subsequently, on December 29, 1892, he conveyed the premises to Mrs. Jennie M. Conklin, subject to the Roth mortgage. On June 20, 1893, Mrs. Conklin conveyed to Mrs. Carrie E. Way, the consideration being, first, a payment of $550 in cash; second, the assumption of the payment of the Roth mortgage; and third, a deferred payment of $450, secured by a second mortgage to Mrs. Conklin. At the time of the execution of the above deeds and mortgages lots 30 and 31 were vacant, but all parties thought they were improved by having thereon a house and outbuildings, which were, in fact, upon adjoining lots 32 and 33, belonging to John A. Perry, having been placed there by mistake of the builder. There is no dispute as to the fact that each of the parties dealing with the property, from the time the house was built until shortly before the filing of the bill in this cause, acted without knowledge of the mistake. Mrs. Way, immediately upon discovering that the improvements were upon lots 32 and 33, purchased the same, paying therefor but $400, their value as vacant property,—$100 in cash, and giving a note for $300, secured by first mortgage, to Perry. Appellee Anna M. Roth filed her bill in the circuit court of St. Clair county to foreclose her mortgage, and sought to have it made a lien upon the lots on which the improvements are. Mrs. Way, after answering the bill, filed her cross-bill, asking that the deed of conveyance from Mrs. Conklin to her, by

which she became the owner of lots 30 and 31, be canceled on the ground of failure of consideration, and that she be relieved from liability under the Roth mortgage, as well as the one executed to Mrs. Conklin. On the hearing this cross-bill was dismissed for want of equity, and a decree of foreclosure rendered in favor of Mrs. Roth against lots 30 and 31, and a personal decree entered against Mrs. Way for whatever should remain unsatisfied on the mortgage after the sale of said lots. From that decree an appeal was prosecuted to the Appellate Court for the Fourth District, and this is an appeal from a judgment of affirmance in that court.

Appellant Mrs. Way insists that the circuit court erred, first, in finding that she was personally liable on the Roth mortgage, and rendering a decree against her for the deficiency arising upon the sale of lots 30 and 31; and second, in dismissing her cross-bill. Anna M. Roth assigned as a cross-error the refusal of the circuit court to decree a lien in her favor on lots 32 and 33. In our view of the merits of the case a decision upon the cross-error will practically dispose of those insisted upon by Mrs. Way as well.

All the parties agree, and from the evidence it is clear, that the mortgages of Mrs. Roth and Mrs. Conklin, aggregating $1850, were intended to cover the lots upon which the improvements were located. The house, being an improvement of the value of about $2000, was regarded as the principal security and was the moving consideration for the mortgages and all other dealings with the property, the vacant lots being worth not to exceed $400. It is equally clear that Thomas B. Glenn, who executed the first mortgage, and all parties who have dealt with the property since, to the time of the discovery of the mistake, including appellant Mrs. Way, acted upon the belief that the lots described in the deeds and mortgages were those upon which the house and other buildings were situated, and not the two adjoining vacant ones,

Mrs. Way entering into and remaining in possession of lots 32 and 33 under her deed from Mrs. Conklin. The mistake in all these transactions was mutual, and was honestly made. Equity will correct mistakes in deeds when clearly and satisfactorily proved and the rights of innocent purchasers have not intervened to make it inequitable to do so. *Broadwell* v. *Broadwell*, 1 Gilm. 599; *Lindsay* v. *Davenport*, 18 Ill. 375; *Hunter* v. *Bilyeu*, 30 id. 228; *Kuchenbeiser* v. *Beckert*, 41 id. 172; *Mills* v. *Lockwood*, 42 id. 111; *Clearwater* v. *Kimler*, 43 id. 272; *Palmer* v. *Converse*, 60 id. 313.

Applying that rule to this cause, we think the Roth mortgage, as well as the one given to Mrs. Conklin, should be corrected so as to cover lots 32 and 33, and thus express the real intention of the parties. True, the mortgagors did not actually convey lots 32 and 33, but they intended to convey the improvements and the lots on which they were located, and, as we have seen, under all the facts of the case a court of chancery can give effect to that intention, treating that as actually done which the parties meant to do.

Under the foregoing rule of equity jurisdiction, if Glenn had continued to be the owner of lots 30 and 31 until the discovery that the improvements were upon lots 32 and 33, and had then, as did Mrs. Way, purchased the latter lots, a court of equity would have unhesitatingly corrected the mistake as against him and declared the mortgages a lien upon the improved lots. What better position does Mrs. Way occupy? When she acquired the title to the lots upon which the improvements were actually located she acted with a full knowledge of the original mistake and the intention of all the parties to the several antecedent conveyances, and we are unable to see upon what equitable principle it can be held that she is an innocent purchaser, in the sense that the mistake cannot be corrected against her. It being conceded, as we think it must be, that if this were a proceeding against

Glenn occupying the same position Mrs. Way does, a court of equity would place the parties in the position in which they intended to place themselves when the Roth and Conklin mortgages were executed, and decree a foreclosure accordingly, no good reason is, or in our opinion can be, shown why the same result should not be reached·as between the present parties. The fact that the mortgagors did not own lots 32 and 33 at the time these mortgages were made is of no consequence. The rule is well settled that where a grantor without title makes a conveyance of land with covenants of warranty, and subsequently acquires the same, the after-acquired title will inure, by way of estoppel, to the benefit of the grantee and his privies. (*Wadhams* v. *Swan*, 109 Ill. 46; *Transportation Co.* v. *Gill*, 111 id. 541; *Walton* v. *Follansbee*, 131 id. 147; *Rigg* v. *Cook*, 4 Gilm. 336; *Gibbons* v. *Hoag*, 95 Ill. 45.) True, lots 32 and 33 were not actually conveyed, but it was the intention of the grantor to do so, and upon the correction of the mistake the after-acquired title should inure to his grantee.

The mortgages having been intended to cover only two lots, viz., those on which the buildings were, cannot, as contended by appellees, be made a lien thereon and also on lots 30 and 31. That would be to make the security greater than was originally intended, and, in effect, make a new contract for the parties.

It follows from what has been said, that the decree of the circuit court, in so far as it dismissed the cross-bill, was right. But we think lots 32 and 33, after the mortgage of $300 to Perry, should be subject to the mortgage of Mrs. Roth for $1400, and then to that of Mrs. Conklin for $450. In this way complete justice may be done to all parties concerned.

The decree below on the original bill will be reversed on cross-error and the cause will be remanded, with directions to enter a decree in conformity with the views here expressed.                    *Reversed and remanded.*