**Bernard Neuburger, Appellee, v. Foreman Bros. Banking Company, now known as The Foreman Trust & Savings Bank, Appellant.**

**Gen. No. 30,053.**

1. REFORMATION OF INSTRUMENTS—*sufficiency of evidence to show omission by mutual mistake of intended provisions in trust agreement*. Evidence in a suit to reform a trust agreement held to show that, by mutual mistake of the parties who executed the agreement, there was inadvertently omitted from the draft of the agreement executed by the parties, an intended provision authorizing the investment of the trust funds in real and personal estate, and an intended provision touching the disposition of the income from such trust funds in the event of the death of both of the complainant and his wife prior to the decease of either of his children.

2. REFORMATION OF INSTRUMENTS—*representation of interest of persons not in esse.* Where the creator of a trust agreement seeks reformation thereof, by the insertion of provisions omitted from the draft of the instrument executed by the parties thereto, and the insertion of such provisions will authorize a testamentary disposition of the corpus of the trust estate cutting off the conditional beneficial interest of nephews of the creator of the trust, contrary to the terms of the instrument as stated in the executed draft, thus affecting the potential rights of possible but unborn grandchildren of the trust creator, reformation will not be denied on the ground that such grandchildren are necessary parties, since their interests are amply protected by the parties before the court.

Appeal by defendant from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1925. Affirmed. Opinion filed December 23, 1925.

D'ANCONA & PFLAUM, for appellant.

PRITZKER & PRITZKER, for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the court.

This is an appeal from a decree ordering certain corrections to be made in a trust agreement. On January 3, 1922, the complainant, Bernard Neuburger, filed a bill of complaint in the superior court of Cook county. Subsequently, other pleadings were filed and the issues, as finally made up, are shown by a fourth amended bill of complaint and the answer of the defendant, Foreman Bros. Banking Company (afterwards entitled The Foreman Trust & Savings Bank, and hereinafter designated as the Bank).

The complainant alleged in the fourth amended bill of complaint that on or about August 14, 1918, desiring to establish a trust fund to assure to himself an income for life, and to provide for the maintenance and support of his wife and children, he concluded to enter into negotiations with the Bank for the purpose of creating such a trust, of which the Bank should act

as trustee; that in pursuance of that determination he consulted with the Bank, and that they together reached an understanding that he, the complainant, would cause to be drafted an instrument by which he would deposit $60,000 with the Bank as trustee; that the instrument should provide that the Bank would have full power and authority to invest the funds in real, personal and mixed property of any kind, and have power from time to time to modify or change the investments; that in the drafting of the trust agreement the complainant should have the sole right to determine the manner of the distribution of either the principal or the income, and the duration of the trust estate; that pursuant to that understanding with the Bank, he directed the drafting of an instrument, substantially as follows:

"First: WHEREAS the party of the first part (Bernard Neuburger) is desirous of establishing a trust fund to assure to himself and to other persons to whom he is bound in love and affection to provide for their maintenance and support, and desiring to place beyond his control and dominion the fund hereinafter referred to, Now THEREFORE, for and in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration paid to each of the said parties, the receipt whereof is hereby acknowledged, said parties MUTUALLY AGREE to and with each other as follows;

"Second: Said first party (complainant) agrees contemporaneously with the execution of this instrument to, and does by these presents assign, convey and deliver unto the said party of the second part the sum of Sixty Thousand Dollars ($60,000.00) par value of the bonds of the United States of America, * * * to HAVE AND TO HOLD unto the said second party and its assigns until the trust herein created shall have terminated. IN TRUST NEVERTHELESS for the following uses and purposes, to wit,

"(a) To take, hold, control and manage the fund

so with it deposited, collect the income therefrom as and when said income shall mature, and deliver all such income, after deducting its reasonable charges to Bernard Neuburger so long as he, the said Bernard Neuburger shall be alive.

"(b) Upon the demise of the said Bernard Neuburger to pay all income derived from said trust fund, in equal shares, to the following persons; viz.: Josephine Neuburger, wife of the said Bernard Neuburger, Burton Neuburger, son of, and Maxine Sylvia Neuburger, daughter of the said Bernard Neuburger, for and during their respective natural lives; in the event of the prior death of either of the above named Burton or Maxine Sylvia Neuburger, leaving him or her surviving any issue, his or her children to take the parent's share, share and share alike between them.

"(c) In the event of the death of either of the above named Burton Neuburger or Maxine Sylvia Neuburger his or her portion shall be paid to such person or persons as he, or she, shall by will direct; but dying intestate, such portion shall be paid to the children of the deceased parent, or if none survive, then to the surviving child of the party of the first part.

"(d) Upon the demise of Josephine Neuburger to pay all income derived from said Trust Fund in equal shares, to Burton Neuburger and Maxine Sylvia Neuburger, until such time as they shall have reached the age of thirty-five years, at which time this trust shall terminate and the principal fund be distributed in accordance with Clause 'c' above; but if any person then entitled to a distributive share shall be under legal disability to act, then and in that event that person or persons' share or shares shall continue to be held under this Trust until such legal disability shall have been removed, either by attainment of majority of said existing beneficiary, or in any way provided for by the Laws of the State of Illinois. In the

event of the death of both said Burton Neuburger and Maxine Sylvia Neuburger prior to the death of Josephine Neuburger without either leaving any issue, and without making other testamentary provision, then and in that event the whole income from said trust shall be paid in full to the said Josephine Neuburger and upon her death the whole of said estate shall be divided equally among the following persons or their survivors; to wit,

"Herbert Neuburger and Sarah Neuburger, children of Joseph B. Neuburger, brother of the said party of the first part and Joseph Neuburger, Alvera Neuburger and Ruth Neuburger, children of Charles Neuburger, brother of the said party of the first part or their survivors, in equal proportion per capita and not per stirpes.

" (e) It is further expressly provided that upon the death of the said Bernard Neuburger, Josephine Neuburger, Maxine Sylvia Neuburger, and Burton Neuburger, if division shall not have been made prior to such time, in accordance with clause 'd' as above set forth the said Trustee shall at once deliver all of the estate, real, personal or mixed in its possession, together with accrued profits if any there be to the then surviving issue of Burton Neuburger and Maxine Sylvia Neuburger, per stirpes and not per capita or to the legatees under the Last Will and Testament of said two children, and this trust shall terminate; but if any person then entitled to a distributive share shall be under legal disability to act, then and in that event this trust shall continue until such legal disability shall have been removed, either by attainment of majority of said then existing beneficiary, or in any way provided for by the Laws of the State of Illinois, conditioned and approved, however, that this estate shall not be held for a period longer than twenty-one years after the death of all the above named Bernard Neu-

burger, Josephine Neuburger, Burton Neuburger and Maxine Sylvia Neuburger.

"(f) It is further expressly COVENANTED AND AGREED by and between the parties hereto that it shall be competent for said Trustee by and with the advice of the beneficiary who for the time being shall be entitled to the proceeds, rents, issues and profits from said estate, to change, or modify the form of investment, to sell, dispose of or reinvest proceeds into real or personal property; and in the event that the said Trustee shall make such investment by and with the advice of such beneficiary, then said trustee shall not be liable for any error of judgment in making such investment; PROVIDED HOWEVER that in the event the advice and consent of the beneficiary becomes necessary for any reason and if because of legal disability such beneficiary or any one of them is incapable of giving his or her consent to the proposed investment, or unanimous consent of all beneficiaries cannot be obtained for any reason, then and in such event the judgment of any Judge of the Circuit Court of Cook County shall be accepted in lieu of the provision herein contained for the consent of beneficiaries for the making of the proposed investments.

"(g) It is further expressly conditioned and provided that upon the termination of the trust hereinabove created, the said trustee shall divide between the parties entitled in the proportion that they may be entitled to the corpus of the estate in kind; but if a division in kind cannot be made without manifest injury to either person, then the trustee shall be at liberty to sell so much of the estate as may be necessary to make an equitable distribution among the beneficiaries then entitled to same in accordance with the provisions of this contract."

It is further alleged that the complainant presented to the Bank an instrument which he believed contained all of the clauses and all of the stipulations contained

in the instrument just set forth, which instrument so presented to the Bank was then duly signed by himself and by the Bank, by its trust officer, in full confidence and belief that it contained all of the provisions intended to be therein contained; that soon after the execution of the instrument, an opportunity presented itself to invest the whole of the trust fund in real estate situated in the City of Chicago, which was deemed advisable for investment purposes by complainant and upon investigation, also, by the Bank, but that upon careful investigation of the instrument of trust it was discovered that it made no provision for the investing of the funds by the Bank in real estate; that thereupon a further scrutiny was made of the instrument and the discovery was then made for the first time that the scrivener in drafting it had inadvertently left out the following words in clause "f" to-wit: "into real or personal property," after the words, "to sell, dispose of, or reinvest proceeds" and that likewise clause "d" was defective in that the following provision was entirely omitted:

"Upon the demise of Josephine Neuburger to pay all income derived from said Trust Fund in equal shares, to Burton Neuburger and Maxine Sylvia Neuburger, until such time as they shall have reached the age of Thirty-five years, at which time, this Trust shall terminate, and the principal fund be distributed in accordance with Clause 'C' above; but if any person then entitled to a distributive share shall be under legal disability to act, then and in that event, that person or persons' share or shares shall continue to be held under this Trust until such legal disability shall have been removed, either by attainment of majority of said existing beneficiary, or in any way provided for by the Laws of the State of Illinois."

It is further alleged that he, the complainant, was ignorant of the said mistake and omissions, at the time of the execution of the trust agreement; that

180     APPELLATE COURTS OF ILLINOIS.

Neuburger v. Foreman Bros. Banking Co., 239 Ill. App. 173.

from the time of its execution until the time when he sought to have an investment made in real estate he rested firmly in the belief that the trust agreement contained all the provisions that he had instructed the scrivener to embody therein; that by reason of the mistake, the trust agreement is deficient in that no provision is made for the contingency in the event that both Bernard Neuburger and Josephine E. Neuburger die prior to the death of Burton Neuburger or Maxine Sylvia Neuburger; that Burton Neuburger and Maxine Sylvia Neuburger are minors, both unmarried, and that neither has any children; that, because of the omissions, the Bank refuses to change the form of investment from personal property into real property, on the ground that it is not empowered to do so; that great confusion must necessarily arise as to the disposition of the property in the event of the death of Bernard and Josephine Neuburger prior to the death of Burton and Maxine Sylvia Neuburger, unless the trust agreement be corrected so that it shall contain all of the provisions which were inadvertently omitted.

The prayer for relief is that the instrument be corrected so as to include the above-mentioned words in clause "d" and clause "f."

The defendants to the bill are the Bank, Josephine Neuburger, Burton Neuburger, Maxine Sylvia Neuburger, Herbert and Sarah Neuburger, children of Joseph B. Neuburger, Alvera Neuburger and Ruth Neuburger, children of Charles Neuburger.

The Bank filed an answer which sets up, substantially, the following: that there was a conference between the complainant and the trust officer of the Bank regarding the creation of the trust, and it was agreed that the complainant was to cause an instrument to be drafted covering the disposition of the principal and income of the amount to be deposited; that the complainant was to have the sole right to determine

the manner of the distribution of the principal and income and to determine all the other provisions to be contained in the agreement; that the defendant had nothing to do with drafting the instrument; that the alleged words and clause were not omitted through an inadvertence or mistake on its part, nor did it sign the instrument in the belief that it contained the alleged omitted words and clause; that it may be true that the complainant directed the drafting of an instrument containing the alleged omitted clause and words and that they were omitted through mistake of the scrivener; and that complainant was ignorant of the alleged omissions at the time he executed the instrument and rested in the belief that they were embodied in the agreement from the time he signed it until he asked the Bank to change the form of the trust fund from personalty to realty, but the defendant is an utter stranger to all such matters.

Josephine Neuburger, wife of the complainant, filed an answer consenting to the relief prayed for; Joseph Neuburger, a nephew, was defaulted; and all the other beneficiaries, including the complainant's two children, being all minors, filed an answer by their guardian *ad litem*.

The cause was referred to Master in Chancery Pollock, before whom hearings were had, and evidence taken.

The complainant, Bernard Neuburger, testified that he was married to Josephine Neuburger and had two children, Burton, aged nine and a half, and Maxine, aged six years; that in May, 1918, he had a talk with his attorney in regard to an investment for the protection of his family, and was advised to create a trust estate; that he directed his attorney to draft an instrument to the following effect: $60,000 to be deposited with the Bank, the income of which should be paid to him, the complainant, for his life, and after his death to be paid in equal shares to his wife and

182    APPELLATE COURTS OF ILLINOIS.

Neuburger v. Foreman Bros. Banking Co., 239 Ill. App. 173.

two children, and after the death of his wife, in equal shares to said children or the survivor, the principal of the fund to be paid to the children when they reached the age of 21; that after such an instrument was drawn, he looked it over, and directed his attorney to change the age of distribution of the principal to his children from twenty-one to thirty-five, and to include a power of testamentary disposition of their respective shares of the principal in the event of the death of either prior to thirty-five; that the instrument was redrawn with these changes and submitted to the trust officer of the Bank, who looked it over and stated that if it was satisfactory to him it was satisfactory to the Bank, but requested him to omit a clause relating to the compensation of the trustee; that complainant's attorney had the instrument rewritten and it was executed by complainant and the Bank's trust officer without being read over by either; that the first instrument presented to the Bank's trust officer contained the alleged omitted clause, and, also, the words "into real and personal property" after the words "to sell, dispose of, or reinvest proceeds" in clause "f"; that the instrument as executed is not the instrument he intended to execute; that he first learned of the omissions when he wanted the trustee to invest the fund in real estate and was informed that the instrument contained no such power to the trustee; that he then read it over and discovered that it contained no provision for distribution of the principal to his children, which he had directed his attorney to include, and which he thought was included; that he did not read the instrument before he executed it, and no one read it to him.

A witness, Katherine Kelly, a stenographer for complainant's attorney, testified that she wrote three or four instruments in regard to the $60,000 trust fund; that the first was in June, 1918, and contained a provision for the distribution of the principal to the com-

plainant's two children when they reached the age of twenty-one years, and a provision authorizing the Bank as trustee to invest the funds in real or personal property; that in July, 1918, she wrote another, dictated to her by complainant's attorney, which provided that the fund was not to be divided until the children were thirty-five years old, and which provided that the Bank could invest the funds in real or personal property; that it, also, contained a provision in regard to the trustee's compensation; that her employer directed her to rewrite it and omit the compensation clause; that she did so, copying the second draft, and omitting only the compensation clause. She further testified that she wrote the instrument that was executed but received no instruction to leave out the clause here in question, or the words "into real and personal property."

There were offered in evidence three documents, all written by her; the first, which fixed the age at twenty-one as the time when the trust should terminate, and the second, which fixed the age at thirty-five years, both of which contained that part of clause "d" here in question, and both of which contained a provision that the trust estate might be reinvested "in real or personal property," and the third, which is the document it is here sought to change and which does not contain that part of clause "d" above referred to, nor the provision that the trust estate might be reinvested in real or personal property. The first two documents contained a provision for the trustee's fees or compensation, but the third, the one here in question, contained no provision on that subject.

The master made a report and therein found that the complainant had directed the drafting of an instrument containing the clause and words in question, and that they were omitted through mistake of the scrivener; that the complainant was ignorant of the omissions at the time he executed the instrument, and

184     APPELLATE COURTS OF ILLINOIS.

Neuburger v. Foreman Bros. Banking Co., 239 Ill. App. 173.

from that time until he sought to have the trustee, the Bank, invest the trust fund in real estate, he understood and believed that the agreement contained all the provisions he had directed to be embodied therein, including the alleged omitted words and clause; that the trust agreement was executed by the parties without the insertion of the matter in question through a mutual mistake, and recommended that it be corrected.

Objections were filed to the master's report and overruled, and upon the filing of the master's report they were ordered to stand as exceptions. The chancellor overruled the exceptions, approved the master's report, and entered a decree that the trust agreement of August 14, 1918, be amended and corrected so that it should include, therein, as an addition to clause "d," the following words:

"Upon the demise of JOSEPHINE NEUBURGER to pay all income derived from said Trust fund in equal shares to BURTON NEUBURGER and MAXINE SYLVIA NEUBURGER, until such time as they shall have reached the age of thirty-five years, at which time this trust shall terminate and the principal fund be distributed in accordance with Clause 'c' above; but if any person then entitled to a distributive share shall be under legal disability to act, then and in that event, that person or persons' share or shares shall continue to be held under this Trust until such legal disability shall have been removed either by attainment of majority of said existing beneficiary, or in any way provided for by the laws of the State of Illinois"; and that clause "f" be amended and corrected so as to include after the words, "to sell and dispose of, or reinvest proceeds," the words, "into real and personal property" and that the trust agreement should thereafter be read and construed with the same force and effect as if it had originally contained the clause and words above set forth.

One of the principal provinces of equity jurisdiction

is the correction of mistakes. In *Pool v. Docker*, 92 Ill. 501, Mr. Justice Scott said: "Correction of mistakes in any transaction is a principal head of equity jurisdiction." *Wilson v. Byers*, 77 Ill. 76. In *Way v. Roth*, 159 Ill. 162, the court said: "Equity will correct mistakes in deeds when clearly and satisfactorily proved and the rights of innocent purchasers have not intervened to make it inequitable to do so." Citing *Broadwell v. Broadwell*, 6 Ill. (1 Gilm.) 599; *Lindsay v. Davenport*, 18 Ill. 375; *Hunter v. Bilyeu*, 30 Ill. 228; *Kuchenbeiser v. Beckert*, 41 Ill. 172; *Mills v. Lockwood*, 42 Ill. 111; *Clearwater v. Kimler*, 43 Ill. 272; *Palmer v. Converse*, 60 Ill. 313.

The principle involved is stated in Pomeroy's Equity Jurisprudence (2nd Ed.), vol. 5, sec. 2096, as follows: "Reformation is appropriate in cases of mutual mistake,—that is, when an agreement has been made or a transaction has been entered into or determined upon, as intended by all the parties interested, but in reducing such agreement or transaction to writing, through a mistake common to both parties, the written instrument fails to express the real agreement or transaction. In such a case the instrument may be corrected so that it shall truly represent the agreement or transaction mutually made or determined upon according to the real purpose and intention of the parties." In a note to that reference many cases are cited. Wigmore on Evidence (1st Ed.), vol. 4, section 2417.

We think that the evidence clearly shows that the omissions as they pertain to clause "d" and clause "f" were due to a mutual mistake. The testimony of the complainant, and that of the stenographer, tends strongly to prove that the trust agreement was intended and assumed to contain the omitted words. The stenographer, who drew the preliminary drafts, and also the instrument as finally executed, testified that the first instrument provided for a distribution

of the principal to the complainant's two children when they reached the age of twenty-one years, and, also, provided that the Bank should have authority as trustee to invest the funds in real or personal property. Her testimony also shows that when she wrote another draft in July, 1918, which was dictated to her by the complainant's attorney, the only change made was that which provided that the fund was not to be divided until the children were thirty-five years old, and that that draft provided, as did the first, that the Bank could invest the funds in real or personal property. And her testimony shows further that as the second draft contained the provision in regard to the trustee's compensation, she was directed to rewrite it and omit that particular clause; that she did so, copying the second draft and omitting the compensation clause; that when she wrote the instrument in question, the one that was actually executed, she received no instruction to leave out the words in clause "d," or the words "into real and personal property" in clause "f." Then, too, the documents offered in evidence confirm her testimony. As regards the intention to give the trustee authority to reinvest the trust funds in real estate, the words in clause "e," "The said Trustee shall at once deliver all of the estate, real, personal or mixed," are significant. That, not only the complainant was mistaken as to the actual contents of the instrument that was ultimately executed, but the Bank was likewise, is evidenced by the testimony of the trust officer of the Bank that he read the draft of the trust agreement which contained a clause regarding the trustee's compensation—which document the evidence shows contained all the matters here in question—but that he had no recollection of reading the instrument which was finally brought in and which was executed, and, therefore, did not know whether the latter actually contained the words in question or not.

It seems quite obvious, therefore, that the evidence sufficiently shows that there was a mutual mistake, and that the omissions were the result of mutual inadvertence.

The question then arises whether, in this situation, with the parties as they are, the complainant is entitled to have the instrument changed to accord with the understanding of the parties. It is urged for the Bank that the grandchildren of the complainant, that is to say, the children of Burton Neuburger and Maxine Sylvia Neuburger, are necessary parties to a proceeding wherein it is sought to correct the trust agreement; that as no child or children have been born to either Burton Neuburger or Maxine Sylvia Neuburger, the interests of unborn grandchildren of the complainant are not represented or protected in this suit; and that there is no person or persons *in esse* in the same class as unborn grandchildren and having like rights and interests who can be brought before the court to represent them, and therefore these proceedings are not maintainable.

According to the terms of the trust agreement, as it was physically executed, Burton and Maxine Sylvia Neuburger, the children of the complainant, could never receive the principal of the trust fund; they could receive only a portion of the income of that fund; and the principal would go to the children of Burton Neuburger and Maxine Sylvia Neuburger, and in the event that they had no children and died intestate, then the principal would go to certain nephews of the complainant. But according to the terms of the trust agreement, when reformed according to the decree of the court and the actual understanding of the parties, the principal of the trust fund, after the death of the complainant and his wife, would be subject to testamentary disposition by Burton Neuburger and Maxine Sylvia Neuburger. It will be seen, therefore, that the nephews and nieces, who are parties to this

proceeding and who would take the fund absolutely if no children were born and Burton Neuburger and Maxine Sylvia Neuburger died intestate, are interested in such a way that even the rights of the children of Burton Neuburger and Maxine Sylvia Neuburger must, as a consequence, be taken into consideration and passed upon by the court.

In *Gavin v. Curtin*, 171 Ill. 640, the court said: "The possible parties, not *in esse*, are therefore represented by the parties before the court, and if they have come into being will be bound and concluded by the decree." It may, also, be said here, that the complainant himself, who created the fund, and, as it is stated in the preamble of the instrument of the trust, to assure "to other persons to whom he is bound in love and affection to provide for their maintenance and support," represents in a very real sense all the *cestui que trustent* not *in esse*. Added security, also, lies in the existence of the trustee and the fact that it is a party to the suit. *Scott v. Scott*, 307 Ill. 586. As the court said in *American Bible Society v. Price*, 115 Ill. 644: "Title is in the trustees, and the duty is imposed upon them to protect and preserve this interest to whomsoever shall be ultimately entitled to it. They are parties to the suit, and they stand for and represent, in this litigation, the ownership ultimately entitled to this fund, and such ownership is bound by their representation." And that language was approved by the court in *Temple v. Scott*, 143 Ill. 290. In the latter case where the court was considering the doctrine of representation considered as an exception to the general rule, which requires all persons in interest to be made parties, it was said:

"On the other hand, if the general rule requires a person to be present merely as the owner and protector of a certain interest, then the proceeding may take place with equal prospect of justice if that interest receives an effective protection from others. It

is the interest which the court is considering and the owner merely as the guardian of the interest; if then some other persons are present who with reference to that interest are equally certain to bring forward the entire merits of the question, the object is satisfied for which the presence of the actual owner would be required, and the court may, without putting any right in jeopardy, take its usual course and make a complete decree; if persons in being are before the court who have the same interests, and are equally certain to bring forward the entire merits of the 'question, and thus give such interests effective protection, the dictates both of convenience and justice require that there shall be a complete decree.'' Citing *Faulkner v. Davis,* 18 Gratt. (Va.) 651; *Bofil v. Fisher,* 3 Rich. Eq. (S. C.) 1; *Mead v. Mitchell,* 17 N. Y. 210; *De Leon v. Barrett,* 22 S. C. 412; *McArthur v. Scott,* 113 U. S. 340; *Mead v. Mitchell,* 5 Abb. Prac. (N. Y.) 92; *Dodge v. Cole,* 97 Ill. 338.

*Monarque v. Monarque,* 80 N. Y. 320; *Watson v. Watson,* 56 N. C. 400, and *Breit v. Yeaton,* 101 Ill. 242, are cited in opposition. In the *Monarque* case, the instrument considered was a will and its contents were not disputed. One of the questions in the case—which was a partition suit—was what interpretation should be made of the words of the will. A testator had died and left certain real estate to his wife for life and after her death to his four daughters for life, the remainder to their respective children. The opinion recites that one of the daughters had already brought a suit for a construction of the will; that the adult defendants did not answer, and that a general answer was made by the guardian *ad litem* of the minors; that the case was submitted without evidence; that no objection was made to the jurisdiction of the court and that it was practically a judgment for the plaintiff by consent; that ''There was no trust or other element to justify invoking the jurisdiction of the

court for that purpose." In the second suit, that is the partition suit, in which the former judgment in the suit to construe the will had to be considered, the court held that as in its opinion grandchildren, if subsequently born, would inherit, the former judgment could not bind them. A close analysis of that case shows, however, that the suit to construe the will—the first case—resulted in a judgment by consent, and as the court said, in the second case, did not involve a trust. We do not find, therefore, that that decision affords much help in the matter.

In the *Watson* case, the plaintiff asked the court to authorize the sale of certain real estate and the investment of the proceeds in more productive property. As in the *Monarque* case, no question arose concerning what words constituted the will, the question being what might be done under the will as it was.

A close analysis of the *Breit* case leads us to the conclusion that there is, in reality, nothing in that case counter to the holding of the court in the later case of *Hale v. Hale,* 146 Ill. 227.

In the latter case, where the subject of necessary parties was being considered, the court said: "But among the exceptions is one growing out of convenience or necessity in the administration of justice, which has given rise to what is known as the doctrine of representation. Thus where it appears that a particular party, though not before the court in person, is so far represented by others that his interest received actual and official protection, the decree may be held to be binding upon him."

It must be borne in mind that the rights of all the beneficiaries of the trust became fixed and inviolable the instant the trust agreement was consummated; and that these proceedings are not to change the actual agreement arrived at, but to have that agreement exist in the very words it was understood to be expressed

in; to establish and perpetuate the actual contents of the agreement itself.

In our judgment, therefore, as the evidence clearly shows that the alleged omissions were made through inadvertence and mutual mistake; that the rights of the unborn grandchildren are remote and amply represented by the parties before the court, that is, by the complainant, the trustee, and the nephews and nieces, and as the objection that the grandchildren are not yet born and so not parties, cannot have weight, as otherwise the delay in correcting the trust agreement would have to go on until after the complainant's death, we are of the opinion that the decree of the chancellor must be affirmed.

*Affirmed.*

THOMSON, P. J., and O'CONNOR, J., concur.